Court. My name is Rob Stevens from Billings, Montana, and I'm representing Richard Saunders. I think the first thing we have to ask ourselves is, how do you show a pretext search and how do you demonstrate that a search is conducted without probable cause? We can examine both the facts and circumstances of the search itself and also the probable cause application. In this case, there are coincidences, and investigators in the criminal law area are always suspicious of coincidences. They don't believe they're coincidences. Also, that which is improbable or appears to be improbable usually is. In this case, Richard Saunders prepared an affidavit in connection with a misdemeanor case. The affidavit was for one of the witnesses, one of his tenants, Ms. Camlin. Ms. Camlin concluded that it was all lies and went to the under sheriff, deputy sheriff in Muscle Shell County, which is a very rural area. She indicated that she had had her home broken into, the cabin she was renting. She indicated that she had looked through the front window and seen everything, which was, of course, a physical impossibility, as we demonstrated here. We also demonstrated that Mr. Saunders had had no contact with her other than asking that she sign the affidavit through Ms. Ott. So you say you demonstrated that she testified at some point to the contrary, that he had come over. I'm sorry. Yes. Mr. Saunders didn't. He asked Ray Ott to deliver the affidavit and for her to sign. No, no. I said something different. Maybe I'm misunderstanding the record, but I thought that she had said at some point that Mr. Saunders came over to see her personally at several points. Is that wrong? Ms. Camlin? Yes. Had seen Ms. Ott at some point? No. That Ms. Camlin said that Mr. Saunders personally came to see her on several occasions. Is that correct? Yes. She did say that. Okay. And we felt that that was untrue, and we thought we had demonstrated it not just by Mr. Saunders' testimony, but also by another tenant, Mark Ott. The problem that we have is that the ATF ---- Counsel, you start off by talking about pretext. Now, I don't recall there was a motion to suppress and then there was an amended motion, was there not? Yes, there was. I didn't see the pretext issue raised in the amended motion. Has this ever been addressed by the pretext argument addressed by the district court? Yes, I think it was, and it was certainly our intent to do that, because our position was that it was not a coincidence that ATF agents were invited to execute a warrant that was designed to seize just computer evidence that Richard Saunders had prepared this affidavit on his machine. The problem with having ATF agents there for a search warrant on ---- for a computer is that, first, there's no alcohol offense involved. Secondly, there's no tobacco violations. The firearms have to be the only thing of concern, and they had been receiving for several months complaints that Richard Saunders was shooting a weapon. Well, that's not illegal for a convicted felon. He had black powder rifles and black powder pistols, and that's an exception to the prohibition. We believe that ATF fully intended to participate for the sole purpose of seizing weapons. That's what they do. And what we have as a problem is that our issuing State judge was never given an opportunity to determine whether or not there was probable cause to search for weapons. He was never given an opportunity to determine whether or not there was a basis to conclude that the Kamlan affidavit prepared by Saunders was untrue because it was never attached to the affidavit. And, in fact, we demonstrated it was true on the allegation of criminal conduct. Now, excuse me if I can interrupt. The reason I'm interrupting is the time is running. The point of Judge Fisher's question is perhaps the argument has been waived. My question is based on the assumption that the argument has not been waived as to pretext. So assuming that the argument is in front of us, what do you do with cases like Wren, W-H-R-E-N? Wren is an automobile stop case where it's essentially conceded for purposes of how we apply Wren that if the officers have a reason to stop a vehicle because of some suspected violation, such as a taillight that's out, it doesn't matter that their real reason for stopping the automobile was that they suspect a contraband or whatever. In other words, pretext doesn't matter in the Wren context. Why does pretext matter here even if it exists? And the subjective state of mind of the officer is irrelevant to a determination of probable cause at will. I would rely on United States v. Reddit for the proposition that if you're going to get a search warrant, you need to have probable cause. You need to show a crime has been committed because a search warrant is intended. No, you don't need to show a crime has been committed. You need to show a certain level of probability that a crime has been committed and a certain level of probability that evidence relating to the crime will be discovered upon the search. I stand corrected on that. However, the purpose of the warrant is to seize the instrumentalities and evidence of the commission of an offense. Now, the uncontradicted facts in this case are that that affidavit was true and not false. And I say that because much of the information in the only paragraph that is complained of, that she was medicated and didn't see anything, came from Ms. Camlin's mouth herself after the incident. And that was relied upon by Mr. Saunders in preparing that affidavit. Let me run through the facts as I understand them, and you can contradict me if I am mistaken. After this affidavit is presented to her by Ray Ott, she goes to the police and she says, this is lies. The police interview her and determine that she says that this is lies, determine that she says, I saw things, I do remember. The police officer who was there says she was there. And the question in front of the officer drawing up the search warrant, and then the question in front of the judge authorizing the search warrant, is whether that's enough to have a high enough level of probability. Am I wrong in stating those facts? Well, we're going to look at the totality of the circumstances then, and here is a woman who comes in and starts out, which version do you want? First off, have I made a mistake in stating the facts that I just stated? I do not believe so, but I think that for our analysis we have to consider all of the facts. Sure, of course. She stated to the deputy that she was seeing snakes, that she was self-committed because she had a, quote, meltdown. She clearly placed the medication issue, and she says, well, on that day, even though she has a history of medication, on that single day she didn't take any medication. Well, these are all improbable circumstances. They should have been checked out by the police officer, the deputy, to provide some verification. What we really do have is a conclusory allegation of criminal conduct without a factual basis for that. Now, when you look at the totality of the circumstances, it's my view that the real problem here is that we had a purpose to go in there, but we didn't have probable cause to search for weapons, so we invited ATF to come in with us when we did a, what I consider, a specious application for search warrant, because it didn't set forth an offense and it did not give the independent magistrate the basis to even ask the question, how is this affidavit false, because it was never presented to him. So I find that fundamentally flawed in the entire process. I wanted to address two issues regarding the sentencing enhancements, or rather the failure to provide a two-point deduction for acceptance of responsibility and a sentencing enhancement for obstruction. The argument that was made by the PSR author is that there was a two-level increase for obstruction because Richard's son, Ricky, filed an affidavit in a civil forfeiture case asserting ownership to a couple of the guns that were being forfeited. Who filed the affidavit? Richard Saunders' son, Ricky. He filed the affidavit? Yes, and it was an affidavit that was prepared by his father for him. The purpose was to prevent forfeiture of two weapons. Now, we know that ownership is irrelevant to the crime of possession. Let me just stop you, counsel. Do you concede that the affidavit drafted by your client was false as to who owned the guns? I don't know that it was false. I know that the .22 rifle was purchased for the son, Ricky. I'm not certain about the other weapon that was the subject of that application. Well, there's a finding, is there not, that the affidavit was false? No. No, I don't think that the affidavit. Well, I guess that has to be implicit. But I'm submitting to you that even if it was a false affidavit, it had to be material. Well, why would, if it was false, why what was offered as the reason for its being false? Are you saying it was never admitted to be false? Because Ricky said he was still living at the home. That was inaccurate because he was attending school in Billings and would only go home on occasional weekends. So they checked it out and found that his residence was in the dorm. But, again, I submit to you that an affidavit filed in a civil forfeiture action regarding ownership is completely irrelevant to the proof of possession, and all we need to do is show constructive possession and a reasonable dominion, which brings me to my second. Well, okay. Let's have your second point quickly. You're over time. We'll hear from the government, and then we will give you a chance to respond. But if you could, I won't cut you off. Give your second point quickly. I was only going to conclude by saying that Richard should have been given an acceptance of responsibility reduction, two points. The first one is that Mr. Saunders has an honest, good-faith belief that he should not be a prohibited person. The second one is that Mr. Saunders has an honest, good-faith belief that he should not be a prohibited person. The stipulation that we entered into with the government established each and every essential element of proof for unlawful possession. There were two reasons for going to trial. One was to preserve the suppression issue for this Court. The other one is that Mr. Saunders has an honest, good-faith belief that he should not be a prohibited person. Okay. Thank you. And we'll give you a minute to respond. May it please the Court. Brian Whitaker for the United States. I wanted to first point out that a pretext search does not matter. That's not the test. It's not whether it's a pretext. It's whether the search exceeded the scope of the search warrant, whether the officers were lawfully where they were supposed to be. And this Court faced a very similar situation in United States v. E. Wayne, which I cited in my briefs where there were State Task Force officers that were looking at an individual for drug possession and distribution as well as they had some suspicion that he was engaged in postal theft and postal fraud. And they included the postal inspector with them when they went to search for drugs. And this Court concluded that even though they were there searching for evidence of drugs and drug paraphernalia and whatnot, they looked in the right place. They didn't exceed the scope of that. And the fact that they brought the postal inspector along and hoped to find evidence of postal fraud, and they did find evidence of postal fraud, that that evidence of postal fraud was admissible because they did not exceed the scope of the search. Counsel, just to be sure I understand, are you agreeing then that pretext was at issue in the district court? No, I am not. In fact, Your Honor, you had it exactly right when there was initial counsel on this that filed a motion to suppress. They raised that issue. Then there was the amended motion to suppress that was filed by Mr. Sanders' new counsel. And that issue was not addressed. And, in fact, the district court put its opinion in a footnote that it believed that this issue had been abandoned by the defendant. So there was not a fully developed record on the scope of the search. The pretext and those issues were not fully expanded upon in the district court, although even if this court were to find that it was in play. I read that footnote, footnote one, on the first page of the order. I have trouble seeing exactly what argument it is that has been abandoned. I mean, I read the footnote. An argument has been abandoned. It may or may not be a pretext argument that was abandoned. Yeah. And so even if it's in play, Your Honors, there was some evidence that was discussed at the suppression hearing about the scope of that search. And Mr. Sanders testified. Why would the ATF have been involved in the search for computer files in a case of? The reason the ATF had been invited to come along was this initial incident that happened between Mr. Sanders with the assault. The sheriff deputy that showed up to respond to that call, Mr. Sanders threatened to put a bullet through his head. He said, Every time I see you, I want to put a bullet through your head. This is a very small county. There's very few officers, sheriff deputies in this county. When they went to execute that search warrant, the sheriff deputies were concerned for their safety. So they had a plan. They brought ATF along. ATF came along in order to go and knock on the door and try to get them out of the residence initially. Is there a procedure in Montana when deputies are afraid to serve warrants that they bring ATF in? They brought them for additional support. And then ATF waited outside. They did not participate in the search. Is that the full extent of ATF's involvement with Mr. Sanders? That was the extent of their involvement. Once the officers found the firearms, they did go and talk to the ATF agents. Has there been any surveillance by ATF of Mr. Sanders prior to the service of the search warrant? I believe that that surveillance took place. I'm not 100 percent, but I believe the surveillance took place after the firearms were found, because Mr. Sanders had indicated those firearms were not his. Then at that point, ATF was trying to do an investigation, and they did do surveillance, and they did set up a camera and whatnot, but that was after that initial search. And so I would submit that even if the pretext scope of the warrant issue is in play, the sheriff's deputies, when they went into the house, they saw a 9-millimeter magazine on the nightstand in the main bedroom in plain view, and on the record, Mr. Sanders testified that there was at a minimum a .22 rifle behind the door in the computer room. The door was open, he said, approximately one to two inches, where an officer could have seen behind there, and they testified that they did see a firearm behind there. But that assumes that the underlying reason for the warrant in the first place was valid. What do you say to counsel's argument that this woman was not reliable because of her disabilities and the like, and he simply relied on what she wound up saying? I guess the computer aspect was because it was supposedly a computer-generated statement. I would submit that there was probable cause to support that warrant. The issue was whether Ms. Cameron could remember the incident. The affidavit that Mr. Sanders tried to get her to sign stated that she was ill, she couldn't remember the incident. So what the sheriff's deputy did was, because it's her memory at issue, he interviewed her. And the court has that interview in the record. It can review that interview if it would like, and the district court did that. Ms. Cameron came to the county attorney and to the sheriff's deputies and said, this affidavit is false, and I do remember the incident. And then the sheriff's deputy, as he interviewed her, continued to ask her what happened. She remembered specific details about the incident. She remembered the wording that Mr. Sanders threatened to shoot that deputy. But didn't the communication from Mr. Ott say that if you won't sign the affidavit, I'll have to subpoena you? That's correct. Well, so why is it seems to me that, you know, it's being elevated into a crime based on this woman saying this affidavit's false, but on the other hand, the guy's saying, if you don't sign the affidavit, I'm going to bring you into court. Well, under Montana law, there's the defendant, Mr. Sanders, in this case, seems to suggest that there's a threat that's required. No, I don't mean a threat. It suggests that he's not afraid of the witness testifying. He just wants to have her confirmed so he doesn't have to go to the trouble of bringing her into court. Well, when you look at the surrounding circumstances based upon the facts of this case, when Mr. Sanders was being led away from the scene, he yelled out to Ms. Cameron, don't talk to the police. He then went to her house multiple times to try to talk to her about the incident and then violated the terms of his release on the state pretrial release court order that ordered him not to. The deputy knew this? I'm sorry? The deputy who signed the warrant knew that? Yeah, and that's in the affidavit for probable cause that he was prohibited by the state district judge from having any contact with Ms. Cameron, which he violated that order in order to send the affidavit over to get it signed. But even if there was not probable cause, we would submit that the good faith exception would save the warrant here. Suppression is not an individual right. It's a remedy that the courts will impose to deter future bad conduct by the deputies. In this case, there's no indication that there was no probable cause in there. The state district judge found that there was probable cause. The county attorney, they went to the county attorney. He reviewed the affidavit and agreed that there was probable cause. Well, you know, once we're getting into good faith, I think the pretext argument may legitimately come back in. I mean, if the officer is conducting the search, and I say this as an if, know that the reason they're going in really has nothing to do with any attempt at witness tampering, but they're hoping to find guns. At that point, I'm going to have trouble finding a good faith exception to a faulty warrant. Well, Horton v. California, United States Supreme Court in Horton v. California, and then this court in United States v. E. Wayne has told us that the subjective intent of the officers, what they hope to find. Yeah, but those are based on valid warrants. I don't know of any case in which there's an invalid warrant, and the good faith exception is invoked, and it's a pretext, and it's established that the only reason they're going in has nothing to do with what's in the warrant. I don't think you've got a case that tells you that. I'm not aware of one. I don't know if it's out there. I didn't specifically look for a case like that. I don't think they exist. They might, but I don't think so. Could you address the sentencing issues in the limited time? The sentencing issues, first of all, the acceptance of responsibility issue, the main thing that we would look for was any remorse or contrition. The defendant did not express any remorse or contrition in this case. He just simply told the district judge, sir, do what you have to do. But even then, he can be accepted responsibility in the sense of stipulating to all the elements, correct? And so what did he do? He went to trial? He went to trial and contested his good faith belief, and, in fact, then he filed a Rule 29 motion and actually did prevail on count two in this case on the ammunition. So there was issues that were in play in addition to just preserving his suppression issue rights. And then on top of that, he obstructed justice. The obstruction enhancement applies and would prevent him from getting acceptance of responsibility. And can you clarify then what was the obstruction? I mean, it's a little confusing now as to what the false affidavit was all about. The false affidavit was submitted in several contexts. First, it was submitted in the civil context on the civil forfeiture by Mr. Sanders to prevent. And what was false about it? In the affidavit, the son had said that he owned the firearms and the ammunition belonged to him, that he was living at the residence. He was not living at the residence. And then also the counsel said that's the only misstatement in the affidavit, that he said he was living there, but he wasn't. Did they ever establish that the ownership statement was false? The ownership, we did establish that. Mr. Sanders admitted that at the suppression hearing, that he, in fact, had purchased several of those firearms himself. We had the ATF forms that he had signed and purchased several of those firearms. So that statement, those showed that that statement by the son was false, that he did not own those guns or possess those guns. Even if his father had given them to him? Well, I guess ownership is not the issue. You're right. It's possession that's the issue. And I would have to look at the exact wording of the affidavit again, but there was a finding that the affidavit was false. And it obstructed the investigation because that was submitted to the ATF. And then, as Your Honor pointed out, they had to do additional investigation. They had to do additional surveillance. They had to talk to additional witnesses. They had to extend that investigation out for quite some time in order to get to the bottom of who actually did possess these firearms. And it went to the material element of possession. I'm asking, I realize I'm taking over time, but let me ask you this. I'm going back to the validity of the warrant. It's unclear to me, not merely that we've got some issue about how believable Ms. Camlin was under the circumstances, but it's also unclear to me, assuming that they're going to make out a charge of witness tampering, if they believe Ms. Camlin, what they've got is somebody coming avowedly on behalf of Mr. Saunders to her, asking her to sign an affidavit that she says is false. So there's no question about what he's the agent behind it. What are they going to find that's going to be inculpatory pursuant to the warrant that you don't already know? Well, I think you would find the evidence on his computer that he was the one, in fact, that actually generated that affidavit. I think at that point on – But I don't think that's in dispute. Well, because – Mr. Ray Odd comes and says, please sign this on behalf of Saunders. So – Well, certainly the circumstantial evidence and the witness evidence shows that, but you would corroborate the witness by showing that that affidavit was, in fact, generated on his computer. Okay. Thank you. Mr. Stephens, would you like a minute to respond? I think that the prosecution has overstated some of the facts. First of all, the four or five times that Richard Saunders is supposed to have been at Camlin's cabin is based upon her suspicions that she saw things move. Nobody ever saw him, and he denied it, and the witnesses that testified confirmed that. In connection with the issue of the amended affidavit or amended motion to suppress filed on June 10th, the first paragraph says that the application for search warrant as initially issued by the State District Court Judge Randall Spaulding to Muscle Shoal County Deputy Sheriff Shawn Lesnick was a pretext warrant intended to gain access to Saunders' residential premises for the sole purpose of conducting a general search based upon suspicions of weapons that would support a Federal charge of felon in possession. What document is that? That is the amended motion to suppress. It goes on that there were insufficient facts. That's okay. You've made the point. You've made the point. Can you give me the page site that you're talking about, the page? Oh, it's in the appendix, and it's exhibit. This is the page on which you're reading. Oh, the page of the amended motion is page 1 and 2, and it's contained in paragraph 1. And do you have an ER citation? Yes, it is. It's the appellant's exhibit 7 to the excerpt of record. No, I need something else. Like, I've got SER pages. I've got ER pages. Do you have that kind of pagination in front of you? It would be Bates number. I don't see the Bates number. It's going to be at the bottom. It's going to say SER page something or other. I think we can probably find it. No. If you can't find it real quick, it doesn't matter. Okay. Apparently it was not numbered. I apologize. We can find it. Okay. In any event, I believe that the Court is aware of the factual issues, and I appreciate your attention and your inquiry. Thank you. Thank you. Thank both sides for their arguments. United States v. Saunders now submitted for decision.
judges: Fletcher, Fisher, Bybee